UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BERNEDA ORNELAS,

                Plaintiff,

        v.

FIDELITY NATIONAL TITLE COMPANY OF
WASHINGTON, INC., FIDELITY NATIONAL
FORECLOSURE SOLUTIONS, PROVIDENT
BANK, PCFS MORTGAGE RESOURCES,
PDFS FINANCIAL SERVICES, INC.,
AMERIQUEST, WESTERN STATES
MORTGAGE CORP., LONG BEACH
MORTGAGE COMPANY,

                Defendants

CASE NO. C04-2141RSM

ORDER ON DEFENDANT
AMERIQUEST'S MOTION FOR
SUMMARY JUDGMENT

       This matter is before the Court for consideration of a motion for summary judgment by defendant Ameriquest Mortgage Company ("Ameriquest") (Dkt. # 42). The Court has reviewed the motion, response, and reply, together with the complaint and relevant case law. For the reasons set forth below, the Court grants defendant's motion and dismisses this defendant from the action.

## BACKGROUND

       This case arises from a series of loan applications and related transactions made by plaintiff in her effort to refinance her home. The facts, as they are set forth in the complaint and the declarations of plaintiff and of counsel, together with attached exhibits, will be recited only insofar as they are relevant to

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 1

this motion.  This evidence and all reasonable inferences therefrom shall be viewed in the light most favorable to plaintiff.  *T.W.Electric Services, Inc., v. Pacific Electric Contractors Association*, 809 F. 2d 626, 630-31 (9th Cir. 1987).

Plaintiff states that in the spring of 2003 she sought to refinance her home mortgage, which was then with defendant PCFS Mortgage or PCFS Financial.[1]  She applied in April 2003, through Northwest Loan Center, for a loan from defendant Ameriquest.  She received  two Good Faith Estimates of fees, one dated April 1, 2003, and one dated April 4, 2003.  Declaration of Melissa Huelsman, Exhibit 1. Plaintiff decided that the loan fees were too high, and on April 8, 2003 she advised two Ameriquest employees, "Shad" and "Harry", that she did not want the loan.   She also sent notice by facsimile transmission, but did not retain a copy of that notice.  She does not recall if she actually signed any loan documents.  Declaration of Berneda Ornelas.  Plaintiff states that throughout April and May, Ameriquest employees continued to call her about the loan, and she advised them repeatedly that she did not want the loan.  *Id.*  She perceived some of the messages as threatening her credit rating.  *Id.*

On April 24, 2003, Ameriquest sent a letter of transmittal regarding the Bernie Ornelas loan to Bankers Trust Company of California.  The transmittal letter indicates that various loan documents, including an endorsed note and deed of trust, were enclosed.  Declaration of Melissa Huelsman, Exhibit 3.  Notes in Ameriquest's loan file record that on May 12, 2003, "Bernie called in saying that she hs cancd ln. . .  Tld ln ofcr won't help gave 800 # [sic]."  *Id.*, Exhibit 6.   A note the following day states "Do not call loan unfunded on 5/12/03.  Recvd [sic] notice on 5/13/03."  *Id.*   A note entered just before midnight on May 13 reads "Cancelled—principal balance was $215000.00."  *Id.*   Nevertheless, on May 14, 2003, Ameriquest sent to plaintiff a "Notification of Incompleteness", advising her that various documents necessary to process the loan had not been received, and that failure to respond to the notice would result in the denial of her request for credit.  *Id.*, Exhibit 4.

Plaintiff continued to work with Northwest Loan Center ("Northwest") to find a mortgage to

---

[1]These entities, although named as defendants in the complaint, have never appeared nor answered.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 2

refinance her home.   She was told that new loan documents were ready for her signature, but then was advised by Northwest on June 12, 2003 that the loan could not close because her credit report indicated that she already had a mortgage loan from Ameriquest.   Plaintiff contacted Ameriquest about this error on her credit report.   On June 13, 2003, Ameriquest sent her a letter admitting that the loan, which was not ever funded, was reported to the credit reporting agencies in error.   *Id.*, Exhibit 5.   The letter also stated that Ameriquest had submitted a request to the credit reporting agencies to remove the account from their records, and that it could take an average of sixty days for the error to be corrected.   *Id.* Plaintiff also contacted the credit reporting agencies.   One, Equifax, sent her confirmation on June 27, 2003, that the Ameriquest loan had been removed from her credit file.   Declaration of Marta Deleon, Exhibit B.   There is no indication in the record that plaintiff then requested Northwest to re-evaluate her loan application based on the corrected credit report.   Instead, plaintiff filed for Chapter 13 bankruptcy in mid-July, 2003.   Deposition of Berneda Ornelas, p. 119.   She later dismissed the bankruptcy and renewed her efforts to obtain refinancing for her mortgage in December, 2003.   She finally signed documents on a new loan from defendant Long Beach Mortgage Company on April 15, 2004.   Amended Complaint, p. 9.

On these facts, plaintiff filed a complaint and amended complaint in King County Superior Court alleging fraud, violation of the state Consumer Protection Act[2], violation of the Mortgage Broker Practices Act[3], Truth in Lending Act[4], and violation of the Fair Credit Reporting Act[5], together with claims of intentional infliction of emotional distress and slander of title.   The action was removed to this Court by defendant Long Beach Mortgage Company pursuant to 28 U.S.C. § 1441 on the basis of the federal questions presented.   Several defendants have been terminated from the action by stipulation.

---

[2]RCW 19.86.

[3]RCW 19.146 *et seq.*

[4]15 U.S.C. § 2601 *et seq.*

[5]15 U.S.C. § 1681s-2(b).

ORDER ON MOTION FOR SUMMARY JUDGMENT - 3

Defendant Ameriquest moved previously for dismissal of the fraud claim against it, and the motion was granted.  Ameriquest now moves for summary judgment on the two remaining claims asserted against it, under the state Consumer Protection Act ("CPA") and the Fair Credit Reporting Act ("FCRA").  Plaintiff's request to stay consideration of this motion so that she may conduct further discovery has been denied by separate Order.

DISCUSSION

I. Fair Credit Reporting Act claim.

Ameriquest asserts that plaintiff has failed to meet the threshold requirement for liability under this act.  Plaintiff's FCRA claim arises under 15 U.S.C. § 1681s-2(b), which states in relevant part,

**(b) Duties of furnishers of information upon notice of dispute**

**(1) In general**

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall —

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency; and

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s-2(b).  Although courts have disagreed as to whether this section creates a private right of action enforceable by consumers, the Ninth Circuit Court of Appeals has concluded that it does.  *Nelson v. Chase Manhattan Mortgage Corporation*, 282 F. 3d 1057, 1059-60 (9th Cir. 2002).  This section stands in contrast to § 1681s-2(a), imposing upon furnishers of information a duty to provide accurate information, which may only be enforced by federal or state agencies or officials.  15 U.S.C. § 1681s-2(d).

There is no dispute here regarding the status of Ameriquest as a "furnisher of information" to the

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 4

credit reporting agencies ("CRA's").   However, the duties imposed on Ameriquest by § 1681s-2(b) arise

"only after the furnisher receives notice of the dispute from a consumer reporting agency, not just the

consumer."  *Aklagi v. Nationscredit Financial Services Corporation*, 196 F. Supp. 2d 1186, 1193

(D.Kan. 2002).   There are important policy considerations behind this requirement:

> It can be inferred from the structure of the statute that Congress did not want furnishers
> of credit information exposed to suit by any and every consumer dissatisfied with the
> credit information furnished.  Hence, Congress limited the enforcement of the duties
> imposed by § 1681s-2(a) to governmental bodies.  But Congress did provide a filtering
> mechanism in § 1681s-2(b) by making the disputatious consumer notify a CRA and setting
> up the CRA to receive notice of the investigation by the furnisher.

*Nelson*, 282 F. 3d at 1059.

Here, there is no dispute over the fact that Ameriquest erroneously reported the unwanted,

unfunded loan to the CRAs as a debt of plaintiff.  However, when the error was discovered by plaintiff on

June 12, 2003, she, not a CRA, contacted Ameriquest to "demand a correction."  Declaration of Berneda

Ornelas, ¶ 7.  Ameriquest responded immediately to correct the error, and so informed plaintiff the

following day, on June 13, 2003.   As to these facts, there is also no dispute.  Thus, no cause of action

arose under § 1681s-2(b), because Ameriquest did not receive notice of the dispute from a CRA

pursuant to § 1681i(a)(2).  *Id.*

In opposing summary judgment, plaintiff argues at length that Ameriquest should be held liable

under § 1681s-2(a)(1)(A) for reporting a debt that it knew to be false—the unfunded loan.  However, as

set forth above, the statutory scheme specifically assigns **exclusive** responsibility for enforcement of

§ 1681s-2(a) to federal or state agencies and officials.  15 U.S.C. § 1681s-2(d).  There is no private right

of action for the erroneous report itself.

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  F.R.Civ. P. 56(c).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by

"identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

material fact." *Celotrex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).   If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. F.R.Civ. P. 56(e).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   It is not the court's function at the summary judgment stage to determine credibility or to decide the truth of the matter. *Id.*  Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

Under the undisputed facts shown here, no cause of action arose under § 1681s-2(b), because notice of the dispute was provided to Ameriquest by the consumer, not by the CRA as required.  Further, upon receiving notice of the error from plaintiff, Ameriquest acted immediately to correct it.  As there is no private right of action against Ameriquest for the furnishing of erroneous information to the CRAs, Ameriquest is entitled to summary judgment on the FCRA claim.

II. Consumer Protection Act claim.

Ameriquest has moved for summary judgment on plaintiff's claim under the Washington Consumer Protection Act ("CPA") on the basis that such claim is preempted by the FCRA.   Ameriquest also contends that, even if the CPA claim is not preempted, plaintiff has failed to prove the elements of a CPA violation.

The preemption argument arises from a provision of the FCRA which provides, in relevant part, that

[n]o requirement or prohibition may be imposed under the laws of any State

(1) with respect to any subject matter regulated under—
. . . .

(F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies. . . .

15 U.S.C. § 1681t(b)(1).  Under subsection (F), exceptions are made for certain enumerated statutes of two states only, namely Massachusetts and California. §1681t(b)(1)(F)(i) and (ii).  There is also an exception for state statutes enacted after January 1, 2004, if they explicitly state that they supplement the

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 6

FCRA. §1681t(d)(2).  This would not apply to the Washington CPA.

Courts have inferred from this language that Congress intended the FCRA to be the sole remedy for a consumer against furnishers of information to credit reporting agencies.  *Howard v. Blue Ridge Bank*, 317 F. Supp. 2d 1139, 1143 (N.D.Cal. 2005).   Thus, "[f]ederal law preempts the area of private consumer actions against furnishers of credit information."  *Lin v. Universal Card Services*, 238 F. Supp. 2d 1147, 1153 (N.D.Cal. 2002).   Plaintiff attempts to avoid this preemption of her CPA claim by arguing that her claim against Ameriquest goes beyond the erroneous report of a loan, to include the repeated harassment "in an attempt to coerce or force her into signing off on the loan."  Plaintiff's Opposition, p. 11-12.  However, plaintiff has failed to allege any damage to her business or property as a result of the threats and harassment.   Both injury and a causal link between the injury and an alleged deceptive practice are essential elements of a CPA claim.  *See, Hangman Ridge Training Stables, Inc., v. Safeco Title Insurance Company*, 719 P. 2d 531, 539 (Wash. 1986).   The only injury asserted by plaintiff as arising from Ameriquest's acts, even including all acts alleged by plaintiff, is the failure of her loan through Northwest to close on June 12, 2003.  As this failure was specifically caused by the erroneous entry on plaintiff's credit report, any CPA claim based on this injury is preempted by the FCRA.

Plaintiff also contends that violation of certain state and federal statutes designed for the protection of consumers amounts to a *per se* violation of the CPA.  Specifically, she cites to the Washington Consumer Loan Act, RCW 31.04 *et seq.* ("WCLA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA").   Plaintiff did not plead a cause of action under either of these statutes, and her attempt now to re-cast the facts to demonstrate violations of these statutes is unavailing.  Moreover, her argument regarding the FDCPA is based on her contention that Ameriquest had already sold plaintiff's unfunded loan to an investment pool, and therefore was acting as a "debt collector" under the statute when it placed calls to plaintiff.  Plaintiff's Opposition, p. 15.  Plaintiff has not pointed to any evidence in the file to support this assertion.  Her vague reference to "testimony of the Ameriquest employees" is wholly insufficient to create an issue of fact.   Defendant is accordingly entitled to summary judgment on the CPA claim.

 ORDER ON MOTION FOR SUMMARY
JUDGMENT - 7

III.  <u>Motion to Strike</u>.

In the Reply, Ameriquest included a motion to strike plaintiff's declaration as unsigned.   As plaintiff later provided a signed copy of her declaration, the motion to strike it is DENIED.   Ameriquest has also moved to strike certain statements of counsel in her Opposition, regarding testimony of Ameriquest employees, and a news article.   As valid reasons have been advanced for striking these portions of the Opposition, the motion to strike counsel's statements is GRANTED.   Finally, Ameriquest's motion to strike all of plaintiff's references to its conduct as "fraudulent" or "deceptive" is DENIED; such references are merely argument of counsel and are permissible.

CONCLUSION

Defendant Ameriquest's motion for summary judgment as to the two claims asserted against it is GRANTED, and this defendant is DISMISSED from this action.  This matter is scheduled to go to trial on January 9, 2006 against the two remaining defendants, Western States Mortgage and Provident Bank.   Counsel are advised to consult the scheduling order regarding relevant dates for motions in limine and the pretrial order, and to prepare for a pretrial conference to be set during the first week of January.

DATED this 9th day of December, 2005.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 8